Good morning, Your Honor. I'm Philip Mann on behalf of the appellant, Michael Swanson. Good morning. Your Honor, I would like you to, if you will, picture this. You're going to a store. You want to buy some items. To help you remember what those items are, you put together a list. And on that list, you have such things as eggs, milk, bread, oranges, coffee. Oh, and one more thing. Don't forget to pick up a layout. A layout. Now, most people listening to that list would understand what I've listed. But layout sticks out. It's different. What is a layout? Well, what is a layout app? No, the mark... That doesn't seem to stick out quite as much. The mark, Your Honor, is layout. It's not layout app. I agree that it could be, you could take a lot of marks that would be generic if additional words are added to them. They do not become generic when you leave out that word. But counsel, don't you have to consider the context in which the word is used? No, I would say in the case of a generic mark, that's the exception. The mark itself says what it is. If you take into account the context, that gets into a suggestive mark. And that's what we believe that this mark is. It falls into the suggestive category. That once you know what the product is, once you know the context in which it is used... Is that your argument, that we cannot consider that this is an application? No, I would not go so far as to say you can't consider it. But that's the context, though. It is the context. But the thing is, layout, it is an app. But layout and app are not synonymous. And when you say... You say there's flashlight and app. But I got two apps on my phone that's called flashlight. Well, that doesn't necessarily mean that it, well, that gets into another question. Flashlight for what kind of app? It depends on what the app does. It shines a bright light at something and helps me see. Last night I couldn't find a light switch on the lamp by the bed, so I turned on my flashlight app to find it. It turns on a light. Your client's app helps people lay out photos. That's one of several things that it does. And, again, if you have the flashlight... But it's identified as a layout app, and people are going to find it looking for a layout app, just like I found the flashlight looking for a flashlight app. I'm not sure I understand that this term has any distinction other than describing what it does, which is the point I think the district court made. All it really... That term does is describe what it does. What's your strongest argument? The strongest argument is that an average person looking at this would not know what layout is. Looking at what? An average person looking at what? Looking at what appears on the iPhone. We have that appears in... The icon? The icon. It just says layout. Wouldn't know what it was? What it does, simply by looking at the icon. Looking at the icon, what it does. Another example you could do... Looking at the word... You're telling me that someone using a smart phone, looking at the word layout on an icon would not have any idea what that does. What if that tells you... What if it's a great place, great beaches to go catch a suntan, and you use this app to tell you where's a great beach to go lay out in the sun? Would you know? If I used... Would that person be interested in buying your client's app? I don't know. It depends. Not all trademarks have to be descriptive. In fact, the best trademarks have absolutely no description. If I go to a computer store and I see Apple, is that going to tell me anything about the product? I'm going to need to find out more. So people don't look to the apps to be descriptive. Well, this doesn't do Apple. I agree. Your client's app does do layout. What does it mean it does layout? That's the whole... Your own client described it as a layout app. He knows what it meant. So why do you think we're so confused? We understand what it means. Well, what we're saying is that's not... And we put this in our appellate brief, Your Honor. The app does far more than simply arranging photographs. It allows you to edit the photographs. It allows you to add captions to the photographs. One of the many things that it does is it allows you to arrange... But calling it layout doesn't highlight any of those things. It just encourages people to find the layout app. Exactly. Which is what even your client called it, what everybody seems to call it. And with all respect, Your Honor, I think you're making the point for me. Layout is an app. But not describing all those other features you're trying to tell me that your client's app contains or trying to describe your client's app distinctly from anybody else's app that accomplishes similar tasks. And that is why the good trademark does not describe what the product does. The fact that layout does not describe... Well, your client's trademark does describe it. So it's not a good trademark, just by your definition. No, it doesn't. With all due respect, Your Honor, I thought you said that it doesn't describe editing. It doesn't describe... Describes other things. But your client's name, Layout, doesn't automatically cause somebody to say, Oh, wow, that's an Apple iPad. This is a Layout. Do all those other things. It's just not the same kind of creature. Well, that gets into the question of secondary meaning, which, as the Court knows, we never got to because the district court said this is generic. And in the case of a generic trademark, regardless of how much secondary meaning exists, you simply do not have rights. Now, we had the case proceeded. We had evidence that there is secondary meaning. But what makes this case... The reason we're here is once the district court said the mark is generic, not merely descriptive, not suggestive, once the court said the mark is generic, it's game over. It doesn't matter how much secondary meaning we have. It doesn't matter how famous the mark is. If it's generic, you simply cannot get protection. And that is the issue that we have up here on appeal. Now, there may be very many other reasons why Mr. Swanson doesn't have rights in the Layout mark, but we're not there yet. We were shot down on the ground that this mark is generic, and that is what we say is the fundamental error made by the district court below. Layout is not one of those words that people know. It's not bread. It's not Apple. It's not microphone. It's not podium. It's not desk. She found that it is. Pardon me? She found that it is, and it seems to me that the reason she found that it is is sort of it's one of those words that can be a noun or a verb, right? And it's often used as a verb. Well, true. To arrange. And, again, once a mark has multiple meanings and it becomes vague, I would suggest respectfully that that means that it's not generic. Generic marks are the whole purpose of protecting or avoiding trademark protection for generic marks is we don't want to restrict people from using the English language to describe everyday items. You don't want to say, I want to go to the store. How does the fact that layout has other meanings make the use in this context any less generic? I mean, if it's generic for this use, that is what it does is lay out photographs in a pattern, how does the fact that layout may mean something else, such as laying on a beach, make the first use of the term any less generic? Because this is the first time that we've used this mark, the first time we were aware of the word layout being used for an app. Now, layout, the district court at the hearing on the Blue Moon. Somebody was the first app called Flashlight. That didn't make it any less generic. Well, do we know for a fact that it was? Did anybody try to get a trademark on that? And, again, going back to that hypothetical, if Flashlight was other things. Did your client try to get a trademark on that? Pardon me? Did your client register for a trademark? So he used it, and now he's trying to lay claim to it. But being first doesn't mean it's unique. It depends on whether the word is being used to describe the actual product. And we respectfully submit that our client was the first to use layout for a mobile application, not the first one to use layout for arranging photographs and so forth. We have to look at what the product is. The product is not a series of photographs. It's not a tool that's used by newspapers to edit pages and move photographs around. It is an app. It is a piece of software. It is not a layout. If you just say layout in the context, another example I can come up with, when I was young, model railroads were popular, and kids used to talk about, oh, that's a really neat layout you have, meaning how the tracks were arranged. Layout was used in that sense. It had nothing to do with photographs. Now, if I came up with a magazine devoted to model railroad, and I called it layout, would you say that's a generic mark? A magazine that's devoted to model railroading that uses the word layout, which admittedly is used in model railroading to describe an arrangement of tracks. If you use that as a magazine, would you say that's generic, or would you say, oh, that's kind of clever? I sort of see the connection. Once I understand the context of it, layout sort of makes sense for this magazine. I submit we fall into the same category here, and that's an example of layout that's got nothing to do with photographs. It's got nothing to do with putting together pages in a newspaper. And in that sense, when you look at what Mr. Swanson's app actually is, it's an app that goes on an iPhone, and it enables you to edit photographs. You can make them bigger, you can make them smaller, you can crop them, you can add captions to them, and among other things, you can put this one here, you can put that one there. If you focus solely on the arranging the photographs and you ignore everything else that it does, that's what the district court says. Ah, because arranging photographs is used in the publishing sense, publishers call that layout. That means that the app itself is a layout, and calling the app layout is generic. Our argument, obviously I'm biased, but our argument is that's extending the concept of generic far beyond its normal bounds, and the district court erred in that sense, and I think that by saying that the mark is generic and not letting the case proceed forward to develop secondary meaning, instances of actual confusion, and so forth, that that's why we are here and not back at the court. All right, counsel, you've exceeded your time. We understand your argument. Afraid I might have. All right, thank you. Thank you, Your Honor. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the court, my name is Christopher Veras. I'm here on behalf of Instagram. What's before the court on review today is an appeal from a final judgment that the mark layout as used by this appellant is generic. He doesn't use it in connection with groceries or magazines or model trains. He uses it for a mobile application that he described as being all about laying out photos in a grid formation, a layout app. He has no trademark registration, so in the district. He didn't say it was all about, counsel. You have a very strong argument, but in fairness, he didn't say it was all about. One of his arguments is that it does other things. That's true. In the briefing, Your Honor, he did argue that the app does other things. One of the statements in the record by the appellant himself in an email that he sent about the app. You want to argue this point? You don't need to argue this point. Very well, Your Honor. It is an app that is for the purpose of creating layouts. He has no trademark registration, therefore, in the district court, he had the burden of proving that he has trademark rights. And more specifically, he had the burden of proving that the term layout is not, in fact, generic. The district court's conclusions of law here are reviewed de novo, including the standard that the district court applied. Its conclusions of fact, its findings of fact, are reviewed for clear error. The district court identified and applied the correct standard for genericness in this circuit. And the standard for genericness here, the substantive standard, is whether the term identifies the type of product as opposed to the source. Counsel, didn't the district court add a test that we normally don't use? Don't we usually ask, what are you and who are you? And the district court added, what do you do? Right, which goes to function, and that's not the general test. So what about that? That is true. The rhetorical questions, the who are you, what are you questions, those are not the substantive standard. They're a rhetorical device to apply the standard. And when you're talking about concrete objects, right, a desk or a chair. Well, if those are not the test, why would you add what do you do into the mix? Because the substantive standard is does the mark, does the alleged mark identify the type of product? With a concrete object, you have a very literal construction. What are you? You're a desk, you're a chair. When you're dealing with a service or when you're dealing with a kind of a computer program, a type of computer program that performs a function, picking a name that simply identifies that function identifies type, not source. You could have, and there are in fact 10, 12, endless number of computer programs that perform the same function. So when you pick a name that identifies that function, you're identifying type. And that was what the district court understood and that was her discussion about the what do you do test. She wasn't changing the substantive standard. She was putting that rhetorical inquiry into context because when you deal with a computer program that performs a function, a name that simply tells you what the function is, tells you what type of computer program you're dealing with, and that is generic under the law of this circuit. But if you said what am I? I'm an app that arranges photos. What would be wrong with that? I don't understand why there was a need to inject this new or different test. I think there are multiple levels of genericness. I think the district court didn't inject a new test so much as she said when you put the inquiry into this context, what are you? A layout app. That would have been an appropriate thing for the district court to say. I don't think she made any substantive change by saying if you also ask what do you do, I create layouts, that that also goes to this underlying substantive issue of type. I don't think it was a substantive change in the test. Well, she identified it as the test. She said in the context of applications for mobile devices whose identity of nature is inseparable from the function or functions the app performs, the test for identifying generic product names may be more productively conceived. Ask the question, what do you do? So she's phrased it in terms of a test. She has. But the substantive standard is what matters here, and that she did not change. Type of a name that identifies the type of product as opposed to the source. Go ahead. No, you go ahead. So you're not asking us to affirm the use of this new test? No. No, I think you can affirm the judgment and should affirm the judgment under the well-established substantive standard in this circuit that the word layout in this context, as used by this appellant, identifies the type of product. So, counsel, what language in the district court decision are you relying upon then to support your argument that the district court relied upon the appropriate analysis? Tell me the language that you're relying upon in the district court decision. Your Honor, she cited and quoted. What page are you on of the record? It's in the order on motion for preliminary injunction. Is that where it is? Yes. And tell me the specific language that you're relying upon to support your argument that the district court actually relied on the function test. So it would be page ER9, where the district court, starting at about line 14, quotes the standard for genericness set up by this court in the advertised.com case. To determine whether a term is generic, the court looks to whether consumers understand the word to refer only to a particular producer's goods, source. That's my paren. Or whether the consumer understands the words to refer to the goods themselves. The problem with that is the next paragraph goes on to distinguish applications for mobile devices from our basic standard that we've set. So how do you reconcile those two? So what the district court was doing there, I think, and the reason that there shouldn't be any trouble affirming the judgment, is that she was putting the inquiry into the context of mobile applications. Again, computer software that performs a function. So this analysis doesn't take place in a vacuum. The question before the district court was, when consumers in the marketplace encounter an app called Layout, when they're in the Apple store or the Google store or the Amazon store, when they come across an app called Layout, what do they understand it to be? Are they going to understand that to be an identifier of source or an identifier of type? And the evidence before the district court was overwhelming that in this unique marketplace, a name that identifies function is used to identify type. And so you look at... Just like it would be if it were called cut and paste. Exactly. That's why I think it's very important in this context that this can be a verb. I agree. I absolutely agree, Judge Christin, because computer software exists to perform a function. It exists to do something. In that particular platform. Yes, and in that particular context. And what's unique about this case and the evidence that was before the district court is that this is a uniquely crowded marketplace. And we had Dr. Kirsch who submitted his expert report where he talked about the fact that just in the Apple store, which is one of several stores where you can get these, in 2015 there were twice as many mobile applications as words in the unabridged dictionary. And one of the things that such a uniquely crowded marketplace does is it causes developers, in order to get noticed, to use generic function names. How do you get noticed in a marketplace that crowded? You name your app based on the terms that consumers are going to use when they're searching for something to do function X. But that doesn't make them distinctive in the sense of being noticed. It makes them possible for the consumer to sort. How to find something, at least in a gross category. Exactly. And that is why people use these generic function names. So that when a consumer types in best layout app, which consumers in this case did, that was in the search evidence submitted by the appellant, if you have the name layout, you're going to pop up. It helps you to be seen to show up in the search results. The other thing Dr. Kirsch explained though... Can I just, forgive me for interrupting, Counsel, but it helps you to be seen, but just to finish this thought about sorting, it helps you to be seen along with a whole bunch of other guys who are called layout. Exactly, yes. So you're not really being distinctive yet. The consumer is going to have to drill down to sort those, but at least they're in the right category. Exactly, yes. You're in the right category. You show up along with a bunch of others called layout. Now the business calculation that people like the appellant make, and our client as well, is that when people search for layout, they're going to get a bunch of results called layout. And we had that in the record, that there were several other apps that used layout in the first word, the first two words. Then the way that consumers sort and identify source, and this is what Dr. Kirsch talked about, is they look at other information. They look at the publisher name. They look at the graphical icon. Because that might be distinctive, but the first cut, sorry, the first sort is generic. I think that's your argument. Exactly, yes. And so consumers understand this. They're primed to see the name and think, okay, this is the group of apps that do layouts. They're primed to see the name. What name? I'm sorry? You said they're primed to see the name, and I thought we were just talking about a generic name, so now you're wobbly in this part of the argument on my scorecard. So what do you mean, they're primed to see the name? They're primed to see the name as generic, as identifying what the app does. To see the word as generic. Exactly, to see the word, the title. To see that word as generic. And then they look for source identifying function in the icon in the publisher name. And that's exactly the way this appellant used his name. Counsel, opposing counsel says the argument that you're making depends on context, and context is not part of the test. What's your response to that? Respectfully, Your Honor, I think that that's, the law is to the exact opposite. All of this analysis must take place in context. Because the question is, how do consumers perceive the name? You can't do that analysis in a vacuum. The word layout hanging out there in a vacuum is not how consumers come across this. They're in a mobile app store, oftentimes looking at photography-related mobile applications. That's how they, when they encounter layout. And whether they're going to be confused or not depends entirely on the context. So, counsel, what case most strongly supports your argument that context matters in the analysis? I think the retail services case from the Fourth Circuit that we cited is obviously not binding here, but it was this very similar context where it was a website called freebies.com. And there were a lot of other websites that offered freebies and used variations of freebies. And it was a declaratory judgment case. So the defendant in that case, but the alleged mark owner, argued that their website was not a freebie. They didn't give away freebies. And the Fourth Circuit looked at that. They called it a razor-thin distinction and rejected it, pointing out that even though the defendants do not directly distribute free products or freebies, their business nonetheless revolves around freebies in the generic sense of the word. So, counsel, is your reliance on the Fourth Circuit case a concession that there is no Ninth Circuit case that says context matters in determining whether or not the test has been met for generic? No, not at all, Your Honor. So what's your strongest Ninth Circuit case to support your argument that context matters in determining whether a word is generic? I think the advertised.com case would be the best. You don't have to tell us what it says. We know the cases. So do you want to sum up? Yes, Your Honors. I think the... Go back to the standard of review here, that the district court identified the correct standards. She applied the correct standard. The appellant had the burden of proof. And when you look at the evidence that was part of the record, he submitted no evidence to satisfy his burden that consumers perceive this functional word as anything other than generic. Opposed to that, you had overwhelming evidence, including his own use of the word, the dictionaries, the experts, and consumer searches, and his own statements that this is a layout app, one of many, many layout apps. That makes it generic under the Ninth Circuit. All right, thank you, counsel. Thank you, Your Honors. Rebuttal. Thank you, Your Honor. I'll be brief. I think the issue of the question of changing what are you to what do you do is significant. I think let's take the test in its original form. What are you? Layout. Does that answer the question? What are you? Layout. If you say what do you do, then this starts getting into the question of, well, now I lay out, and it starts becoming a little bit ambiguous. But I think that was a radical change that was adopted by the district court. I don't think it's just a synonymous test that the district court adopted here. Obviously, if that's something that's going to be a new test in the Ninth Circuit, that should come from this court and not from the district court. With respect to the issue of context, Your Honor, I didn't mean to say the context is absolutely unimportant. In determining these things, I think that our example that I've always been using about an apple, whether it's generic or not generic depends on the context. If we're talking about fruit, obviously it's generic. If we're talking about computers, it is not generic. To bring this into our case here, if you say what is a context, the context is a mobile app. It's not moving photographs around. It's not a visual collection of photographs. It's an app. If you just say layout in connection with an app, does it tell you so specifically what it is that there's no question what it does? As I said, layout, could that refer to catching rays on a beach somewhere? I can think of any number of ways where layout would be in context of an app would make sense that would have absolutely nothing to do with arranging photographs. With that, Your Honor, unless there are any questions, I think we've beaten this dead horse enough. All right. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The next case on the calendar for argument is United States v. Velasco Soto.
judges: Rawlinson, Clifton, Christen